UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Lazinnial Brandon, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 06-1316 |
| | ) | |
| Steven S. Smith, et al, | ) | |
| Defendants | ) | |

**OPINION and ORDER**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court are four motions to dismiss (Doc. #78, 80, 82 and 90), each attacking part or all of Plaintiff's Fifth Amended Complaint[1] (Doc. #76).

Previous orders have set out the factual background of this case, and those factual allegations will not be repeated except as needed for clarity. Plaintiff's decedent Bruce Nicholson committed suicide while detained at the Peoria County Jail. Medical services for the jail were provided by Advanced Correctional Healthcare Inc. ("ACH"), pursuant to a contract with the Sheriff. Mental health services were provided by Human Service Center ("HSC") pursuant to another contract with the Sheriff. The individually named defendants are each employed by one of these three entities. The Fifth Amended Complaint includes a claim against Peoria County, Sheriff Michael D. McCoy and two jail employees (Steven Smith and Michael Hulse), ACH and three employees (Dr. George Shotick, Pam Hibbert, and Patricia Mattus) and HSC and two employees (Frank Hubble and Ed Wong).

---

[1] Any reference herein to "complaint" is a reference to the Fifth Amended Complaint.

The Fifth Amended Complaint consists of 20 counts, titled as follows:

| | |
|---|---|
| Count I | CIVIL RIGHTS CLAIM VS. PEORIA COUNTY |
| Count II | CIVIL RIGHTS CLAIM VS. SHERIFF MICHAEL D. MCCOY |
| Count III | CIVIL RIGHTS CLAIM VS. CORRECTIONS SUPERINTENDENT STEVEN SMITH |
| Count IV | CIVIL RIGHTS CLAIM VS. MICHAEL HULSE |
| Count V | CIVIL RIGHTS CLAIM VS. ADVANCED CORRECTIONAL HEALTHCARE ("ACH") |
| Count VI | CIVIL RIGHTS CLAIM VS. SHOTICK, HIBBERT[2] AND MATTUS |
| Count VII | CIVIL RIGHTS CLAIM VS. HUMAN SERVICE CENTER ("HSC") |
| Count VIII | CIVIL RIGHTS CLAIM VS. HUBBLE AND WONG |
| COUNT IX | ADA AND § 504 CLAIM VS. PEORIA COUNTY, SHERIFF MCCOY, ACH AND HSC |
| Count X | POLICY CLAIM V. SHERIFF MCCOY AND SUPERINTENDENT SMITH |
| Count XI | POLICY CLAIM V. ACH |
| Count XII | POLICY CLAIM V. HSC |
| Count XIII | WRONGFUL DEATH CLAIM V. [all defendants] |
| Count XIV | STATE TORT CLAIM VS. [all individual defendants] |
| Count XV | STATE LAW CLAIM FOR IIED VS. [all defendants] |
| Count XVI | STATE LAW CLAIM PURSUANT TO 755 ILCS 5/27-6 VS. [all defendants] |
| Count XVII | STATE LAW CLAIM PURSUANT TO 745 ILCS 10/9-102 VS. PEORIA COUNTY AND/OR SHERIFF MCCOY |
| Count XVIII | RESPONDEAT SUPERIOR CLAIM V. SHERIFF MCCOY |
| Count XIX | RESPONDEAT SUPERIOR CLAIM VS. ACH |
| Count XX | RESPONDEAT SUPERIOR CLAIM VS. HSC |

---

[2] The following information was learned at the Rule 16 conference held on March 14, 2008. According to Plaintiff, Hibbert was recently served, and counsel indicated he would file his return of service executed; he has not yet done so. He is ordered to file return of service executed for Hibbert within 14 days of the date of this Order. Counsel for ACH advised that, once Hibbert is served, he will represent her, that he will file a consent to magistrate judge jurisdiction on her behalf, and that any discovery done in the interim will be valid as to her. In addition, the schedule that was implemented at the Rule 16 conference will govern Hibbert, once she is actually in this case. Although it was not discussed at the hearing, any ruling contained herein that deals with Mattus will presumably also deal with Hibbert; any motion filed by Hibbert shall be based only on the need to protect her record and, if applicable, any factual differences that dictate a different argument.

## MOTION BY ACH DEFENDANTS

The first motion to dismiss was filed by ACH and its employees Dr. George Shotick (#78) and Patricia Mattus (#90); Mattus simply adopts the arguments advanced in the motion by ACH and Shotick as to Counts XII, XIV and XVI, so as to those three Counts, both motions will be addressed together.

Defendants first argue that Count V fails to state a claim under section 1983, because such claims must include allegation and proof of an unconstitutional custom or policy on the party of the entity, which caused the injury at issue. These two counts allege instead that ACH failed to implement and/or follow a policy, which Defendants contend is "the antithesis of the 'custom and policy' requirement. If there was no policy, there can be no liability."

I disagree with Defendants' interpretation of the law. It has long been black letter law that the liability of an entity under section 1983 cannot be based on *respondeat superior*; entity liability must be based on a policy, practice or custom of the entity that caused the injury of which plaintiff complains. Monell v. Dept. of Social Svcs., 436 U.S. 658, 690 (1978). But if an entity fails to implement a policy in response to "faults systemic in nature", that failure in and of itself can be the requisite "custom or practice" and may therefore form the basis of a civil rights claim. Strauss v. City of Chicago, 760 F.2d 765, 770 (7th Cir. 1985); see, also Jones v. City of Chicago, 787 F.2d 200, 204 (7th Cir. 1986)("In situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable"), quoted in Armstrong v. Squadrito, 152 F.3d 564, 578 (7th Cir. 1998).

The complaint has adequately alleged that there were systemic problems at the jail and that ACH was part of those problems. Whether Plaintiff will ultimately be able to prove his allegations

is a question not properly before the Court at this time. The motion to dismiss on this ground is denied.

Defendants next challenge the sufficiency of Count XI. In this Count, Plaintiff alleges that an ACH physician, Dr. Johnson (who is not named in this litigation) and two nurses (Defendants Mattus and Hibbert) were the policy making agents of ACH with respect to the medical services provided at the jail (hence, these three will be called "ACH" in this discussion). The Count includes allegations that ACH failed to conduct a systemic review of the policies of ACH, the Sheriff, and HSC. Plaintiff claims that this failure would result in a denial of necessary medical treatment to persons in custody at the jail, and that ACH had the obligation to preserve key facts of any wrongdoing and to preserve relevant records regarding medical treatment of inmates. In addition, the complaint appears to allege that Dr. Johnson refused to conduct an investigation "into the death of the deceased."

This Count is inartfully plead at best. There is nothing in the allegations of Count XI that links any failure on ACH's part to the decedent in this case, nor does it allege any injury whatsoever to the Plaintiff's decedent.

Assuming, as Defendants do, that this is an effort to plead an "access to courts" claim, I conclude that the claim must fail. As the Seventh Circuit explained in Vasquez v. Hernandez, 60 F.3d 325, 329 (7th Cir. 1995), an access to courts claim based on a coverup can only succeed if the coverup succeeds, namely that a plaintiff has been prevented from pursuing his legal rights in state court or his claim for damages has been reduced by the coverup. In Vasquez, the Court of Appeals denounced the conduct of the defendants but declined to allow them to proceed with their claim, because the coverup had failed to deprive them of any constitutionally protected rights.

The only case either party cites where an access to court claim was successful was <u>Bell v. Milwaukee</u>, 746 F.2d 1206 (7th Cir. 1984), overruled on other grounds in <u>Russ v. Watts</u>, 414 F.3d 783 (7th Cir. 2005), for the proposition that a refusal to investigate is actionable if it was done deliberately to cover up wrongdoing. <u>Bell</u> involved a conspiracy among police officers and employees of the coroner's office to present false testimony at trial about the circumstances surrounding the shooting death of a criminal suspect. The cover up resulted in a 20 year delay in learning the actual circumstances, thus hampering efforts to proceed with a tort claim. As Defendants point out, it is difficult to go from the facts of that case to the facts of this case - where Plaintiff clearly has timely access to this Court - and apply <u>Bell</u> without noting the significant differences the law of that case.

Plaintiff also relies on a case from this District, <u>Gayton v. McCoy</u>, No. 04-1354 in which District Judge McDade adopted (Order, Doc. #22) that portion of a Report and Recommendation refusing to dismiss a claim before discovery; the issue was whether named individual defendants had actual knowledge of the need for a policy relating to medical care of pretrial detainees and/or inmates. That case does absolutely nothing to further the Plaintiff's position that there is a duty to investigate under the alleged facts of this case or that there is an access to courts issue presented by those facts.

I find that if Plaintiff is attempting to state a claim for denial of access to courts, he has failed and Count XI must be dismissed. If this Count was an effort to plead some other claim, such as breach of a duty to investigate, it has been inadequately plead and cannot stand as is. Plaintiff has alleged absolutely nothing that would connect any such breach to any injury to the decedent. Count

5

XI is therefore dismissed; Plaintiff may replead if there is a good faith basis with support in the law and facts for doing so.

In Count IX, Plaintiff alleges that ACH is liable under the ADA and/or the Rehabilitation Act. Defendant ACH argues first that it can only be liable under the Rehabilitation Act if it receives federal funds, and the complaint contains no such allegation. That is incorrect. Paragraph 61 of the Fifth Amended Complaint expressly alleges that ACH receives federal funds.

Defendant ACH next argues that it is not a "public entity" and hence is not covered by the ADA. The ADA defines "public entity" as a railroad, a state or local government, or a "department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131. See, Green v. City of New York, 465 F.3d 65, 78-79 (2d Cir. 2006).

Plaintiff responds that he has incorrectly plead this claim and that liability under the ADA for ACH violations lies with the Sheriff. Plaintiff states that his intent was to plead that ACH, as a subcontractor to a "public entity" was required to meet the standards of the act and that its failure to do so imputes liability on the public entity, namely the Sheriff. Plaintiff may replead this Count in that manner. However, that amendment must make very clear that the ADA claim is against the Sheriff, based on the acts of subcontracting parties. There is no direct ADA claim against ACH.

Defendant ACH next challenges this count, arguing that it does not allege discrimination. The Complaint expressly states that ACH failed to modify their services and programs to reasonably accommodate Nicholson's mental disability and that this failure resulted in Nicholson's death and in damage to his estate. That is marginally sufficient to state a claim for violation of the ADA. Plaintiff need not plead his evidence; whether Plaintiff will be able to marshal proof of his allegations is a question improperly addressed at this time.

Defendant ACH next argues that Count XIII fails to state a claim for wrongful death. Count XIII alleges that at the time of Nicholson's death he left a surviving son and daughter, who were deprived of the society, companionship, love and affection of their father. Defendants argue that "parents and siblings have no right to recover under § 1983 for the loss of society or companionship with their child or sibling", citing Russ v. Watts, 414 F.3d 783 (7th Cir. 2005).

Actually, Russ overruled Bell, supra, to the extent that it allowed a constitutional claim for a parental liberty interests for the killing of an adult child. The Russ Court distinguished claims of minor children from those of adult children, and held that there is no constitutional right "to recover for the loss of companionship of an adult child when that relationship is terminated as an incidental result of state action." In addition, Russ held that "finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court." Russ, 414 F.3d at 790. Russ went on to re-state the basis for a federal wrongful death claim as "state action that purposefully interfered with the family relationship." Id..

To the extent that the wrongful death claim in Count XIII is based on federal constitutional law, Russ demands its dismissal. There is no allegation - and it would be unreasonable to infer such a fact from the complaint - that any wrongdoing by any of the Defendants was directed at Nicholson's relationship with his children. This analysis applies equally to all Defendants named in Count XIII; it is not limited to the ACH defendants. Count XIII is therefore dismissed.

Finally, ACH argues that Counts XIV and XVI fail to state claims for "state torts" under the Survival Act. Count XIV alleges that the defendants were reckless, negligent, or grossly negligent and that their conduct resulted in decedent's suicide. The claim makes no reference whatsoever to

the Survival Act. It appears to be a straightforward negligence claim that, pursuant to the Survival Act, survives the death of Nicholson. I see no basis for dismissing this Count.

Count XVI is a claim brought directly under the Illinois Survival Act. Illinois law is clear that this statute does not provide a separate cause of action apart from a tort claim; it merely provides for the survival of tort claims that would otherwise abate with the death of the plaintiff. See, <u>Advincula v. United Blood Svcs.</u>, 678 N.E.2d 1009, 1029 (Ill. 1996). Count XVI cannot stand on its own and is therefore dismissed.

### MOTION BY SHERIFF MCCOY, STEVEN SMITH, MICHAEL HULSE AND PEORIA COUNTY

The above-named Defendants are referred to jointly as the Sheriff, unless the context requires more specificity. The Sheriff first moves to dismiss all six claims against Peoria County. In an earlier Order (Doc. #22) Plaintiff was instructed to reinstate a claim against Peoria County because it is a necessary party pursuant to <u>Carver v. Sheriff of LaSalle County</u>, 324 F.3d 947,948 (7th Cir. 2003). In the Fifth Amended Complaint, Plaintiff stated six separate claims against the County.

These six claims go well beyond what <u>Carver</u> requires, asserting various civil rights claims directly against the County based, for example on jail policy, for which the County has no authority. See 730 ILCS 125/3 and <u>Moy v. County of Cook</u>, 640 N.E.2d 926 (Ill. 1994). Plaintiff agrees to dismiss all claims against the County except for Count XVII, in which the County is properly a necessary party under <u>Carver</u>. The motion to dismiss is granted to that extent. The County is dismissed from all Counts except Count XVII.

The Sheriff next argues that Counts II and X are duplicative as to Sheriff McCoy. Plaintiff agrees to dismiss Count II. Count II is accordingly dismissed.

Next defendants argue that Counts III and X are duplicative as to Steven Smith. Plaintiff agrees to dismiss Count III entirely and to dismiss Smith from Count X. So ordered.

Defendants next attack the sufficiency of the individual capacity claims against Hulse, McCoy and Smith. Their first argument is based on the perception that the factual allegations demonstrate as a matter of law that Hulse is entitled to qualified immunity. The issue of qualified immunity is to be decided at the earliest stage of litigation. Once the defense of qualified immunity is raised, it becomes the plaintiff's burden to negate the defense. In order for a plaintiff to defeat a qualified immunity defense at this stage, two conditions must be satisfied: 1) the complaint must adequately allege facts that, if true, would constitute a violation of a constitutional right; and 2) the case law must be clearly established at the time of the alleged violation so that a reasonable public official would have known that his conduct was unlawful. Harlow v. Fitzgerald, 457 U.S. 800 (1982). These are purely legal questions. Siegert v. Gilley, 500 U.S. 226, 232 (1991).

The complaint alleges that all Defendants, including Hulse, were aware that Nicholson was a heroin addict and that he paced, talked to himself and exhibited other behavior "indicative of an individual with mental illness and one who might attempt suicide." In addition, the complaint alleges that Hulse did not observe Nicholson for about two hours prior to discovery of his suicide. Finally, the complaint alleges that Hulse discarded Nicholson's written requests for medical help for his mental illness and that Nicholson told Hulse (among others) that he was hearing voices. From these allegations, Defendants would have the Court find that Hulse's failure to act did not rise to the level of deliberate indifference, because he was entitled to rely on the medical professionals' apparent determination that Nicholson did not require mental health treatment.

9

I disagree with Defendants' argument, which is based in large part on Mathis v. Fairman, 120 F.3d 88, 91 (7th Cir. 1997). That case, however, was decided at the summary judgment stage, after the evidence had been fully developed. The Mathis Court was able to conclude from the evidence - and not simply from the pleadings - that jail employees knew only that the prisoner was "acting strangely." A psychological evaluation on the date of his death had determined the prisoner was not a danger to himself. Yet, despite all this, the corrections officer had checked the prisoner regularly and had reported his strange behavior to his superior officers. The Court held that the officer had not been deliberately indifferent.

Here, the allegations are quite different from the facts established in Mathis. Hulse is alleged to have known of Nicholson's troubling behavior but to have done nothing, not even check his cell for a two hour period. If those facts are true, it would be possible to conclude that Hulse consciously disregarded a risk of which he was aware, by turning a blind eye to a situation that required action. In other words, if the alleged facts are true, a constitutional right is implicated, and that constitutional right was clearly established at the time of Nicholson's suicide. Farmer v. Brennan, 511 U.S. 825, 840-42 (1994); Salazar v. City of Chicago, 940 F.2d 233, 238-41 (7th Cir. 1991). Whether the alleged facts are true is a question not before the Court at this time.

The Sheriff next argues that Count IX, the ADA claim, must fail as plead. Plaintiff has been given leave to replead this claim to make clear the basis for ADA liability on the part of the County, the Sheriff, HSC and ACH. Whether he successfully does so remains to be seen. At this point in time, Count IX is being dismissed, so this portion of the Sheriff's argument is moot. Plaintiff is cautioned that in repleading, the arguments made by the Sheriff shall be considered carefully.

The Sheriff next argues that no federal constitutional claim arises for a wrongful death of a family member unless the intent of the defendant was to interfere with the familial relationship. Russ, 414 F.3d at 787-788. This argument was adopted above and is repeated here: under Russ, the federal wrongful death claim must be dismissed.

To the extent that the wrongful death claim is based on Illinois' wrongful death act, the Court has previously ruled that the Illinois Local Government and Governmental Employees Tort Immunity Act provides immunity from liability for failing to prevent a suicide by more frequent cell inspection. See Order (Doc. #22, p. 10). 745 ILCS 10/4-103. To the extent that any one of the tort claims against McCoy, Smith, or Hulse is premised on such a failure, the claim can only succeed if it is plead that the Defendant acted wilfully or wantonly. 745 ILCS 10/4-105. There is no such allegation in either the general section or in Count XIII, so it cannot stand as plead. Plaintiff may re-plead a state law wrongful death act claim if there is a good faith basis for such an allegation.

## MOTION BY HUMAN SERVICE CENTER, FRANK HUBBLE, AND ED WONG

In this motion, the HSC Defendants first move to dismiss Counts VII and VIII. These two counts each allege violation of 42 U.S.C. § 1983. Count VII is against HSC, while Count VIII is against Hubble and Wong. The two civil rights claims allege that HSC's policies (or failure to have policies) proximately caused Nicholson's suicide in violation of his Eighth and Fourteenth Amendment rights. According to Defendants, Plaintiff's pleading of claims under another, more specific statute, namely Count IX under the Americans with Disabilities Act (ADA) and Rehabilitation Act, precludes obtaining relief under Section 1983. The ADA claim in Count IX alleges that HSC failed to reasonably accommodate Nicholson's mental disability and to modify the jail services, thereby causing his death and the damage to his estate.

In support of this argument, Defendants cite a single District Court case, Taylor v. Altoona Sch. Dist., 513 F. Supp. 2d 540, 563 (W.D.Pa. 2007), which discusses Rancho Palos Verdes v. Abrams, 544 U.S. 113 (2005). Plaintiff responds, without citing any authority, that the ADA claim and the § 1983 claim stand separate from each other and are based on separate and distinct allegations. The ADA claim, according to Plaintiff "is brought to remedy the discrimination that Nicholson faced because of his disability, while the Section 1983 claim is brought to remedy constitutional violations." (Plaintiff's Response, at p.1). Neither party mentions the Sea Clammers doctrine, which is what both of Defendant's cases are about.

Middlesex County Sewerage Authority v. National Sea Clammers, 453 U.S. 1 (1981), is the "seminal case discussing the intersection between statutory remedies and § 1983." Communities for Equity v. Michigan High School Athletic Assn, 459 F.3d 676 (6th Cir. 2006). When the rights at issue under § 1983 are statutory, a § 1983 action is impermissible when "Congress intended to foreclose such private enforcement." Wright v. City of Roanoke Redevelopment & Housing Authority, 479 U.S. 418, 423 (1987). Such intent may be found either in express statutory language or where a statutory remedial scheme is so comprehensive that an intent to prohibit enforcement other than by the statute's own scheme may be inferred. Id. See also, Waid v. Merrill Area Public Schools, 130 F.3d 1268 (7th Cir. 1997) (Title VII and Title IX claims preclude "parallel" civil rights claim for employment discrimination under § 1983).

The Supreme Court re-examined Sea Clammers in Smith v. Robinson, 468 U.S. 992 (1984), distinguishing those cases in which a plaintiff seeks to enlarge a detailed statutory *remedy* by also asserting a claim under § 1983 from those cases in which plaintiffs use § 1983 as a vehicle to enforce a constitutional *right* in addition to statutory rights. Where the constitutional claims were "virtually

identical to" the statutory claim, a plaintiff may not circumvent the statutory remedies by bringing those constitutional claims under § 1983 as well.[3]

Rancho Palos Verdes is the most recent case to discuss Sea Clammers. In that case, the issue was focused on the comprehensiveness of the remedies afforded by the substantive statute. Where the remedies are detailed but more restrictive than the remedies under § 1983, the statutory remedies prevail, and the plaintiff may not ordinarily[4] expand those remedies by utilization of the Civil Rights Act. Rancho Palos Verdes , 544 U.S. at 120. Nothing in Rancho Palos Verdes, however, changed the Sea Clammers limitation on the doctrine: it applies where the claims are "virtually identical.

The Seventh Circuit has not examined Rancho Palos Verdes[5] in the context of either the ADA or the Rehabilitation Act. Other Circuits have, although those cases are of limited assistance here. See, Blanchard v. Morton Sch. Dist., 509 F.3d 934 (9th Cir. 2007)(IDEA claim precludes use of § 1983, and ADA and Rehabilitation claims fail because no recoverable damages to parent); Doe

---

[3]Following Smith, Congress amended the statute, and the Circuits are split as to whether that amendment superseded Smith's analysis of the statute entirely or whether some claims can be asserted under the successor statute (IDEA) but not under § 1983. In the Seventh Circuit, this issue is governed by Marie O. v. Edgar, 131 F.3d 610, 622 (7th Cir. 1997)(amended statute enacted "for the express purpose of ensuring" that § 1983 claims are available to enforce IDEA). Regardless of the specific effect of the amendment, the reasoning in Smith remains viable.

[4]As the Rancho Palos Verdes Court held, " The ordinary inference that the remedy provided in the statute is exclusive can surely be overcome by textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983." 544 U.S. at 122.

[5]In McCready v. White, 417 F.3d 700, 703 (7th Cir. 2005), the only Seventh Circuit case to address Rancho Palos Verdes, the Court of Appeals stated that Rancho Palos Verdes, along with Gonzaga University v. Doe, 536 U.S. 273 (2002), established that personal rights secured by laws may be enforced by § 1983 and that the laws establishing these personal rights need not rest on the spending power, as did the law in Gonzaga. The issue in McCready was not, however, whether § 1983 may be used to expand the remedies available under a federal statute, so McCready is of limited use here.

v. Kidd, 501 F.3d 348 (4th Cir. 2007)(citing Rancho Palos Verdes for proposition that § 1983 is available to vindicate personal rights created by a statute that does not establish a private judicial remedy for rights, applying that holding to Medicaid Act; claim under ADA not analyzed under Rancho Palos Verdes); Ball v. Rodgers, 492 F.3d 1094 (9th Cir. 2007)(Medicaid "freedom of choice" provision created private rights that can be enforced through § 1983; ADA and Rehabilitation Act claims remanded as not addressed in final judgment); Fitzgerald v. Barnstable School Committee, 504 F.3d 165 (1st Cir. 2007)(Title IX precludes § claims pursuant to Sea Clammers).

Here, Plaintiff claims to be using § 1983 to assert a constitutional *claim* in addition to the statutory *claim* he asserts under the ADA; he is not simply seeking additional remedies. If he is correct, then Smith allows both claims to go forward. At this point in time, evaluation is based solely on the complaint. I find that complaint has sufficiently alleged two separate claims, one based on the Defendants' failure to have policies accommodating mental illness (an ADA claim) and the other based on a Defendants' reckless indifference to his medical needs (a constitutional claim). Whether there is proof sufficient to support the distinction is not a matter properly before the Court at this time.

Next defendant asks for dismissal of Count IX, a claim arising under Title II of the ADA and § 504 of the Rehabilitation Act. Plaintiff seeks punitive damages in this Count, which are not available under either Act. Barnes v. Gorman, 536 U.S. 181 (2002). The claim for punitive damages must be stricken.

Defendants next argue that Count IX does not include sufficiently detailed factual allegations as to each element of the claims to give notice of the claims. In essence, Defendants' position is that

Plaintiff is obligated to plead enough to show that his claim is based on discriminatory exclusion of services, and that there is nothing in the complaint from which such discrimination may properly be inferred.  In Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S. Ct. 1955, 1964 -1965 (U.S.2007), the Supreme Court  stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  ... [O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.  Factual allegations must be enough to raise a right to relief above the speculative level.

Id. [internal citations omitted].

> The Court added:
>
> Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.  ... Rule 8(a) contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it.

Id. at n.2 [internal citations omitted].

A review of the complaint reveals that there is enough plead to meet the standards enunciated in Bell.  The complaint pleads that Defendants failed to modify their operations and services in order to accommodate Nicholson's mental disability, and that the reason for their failure was discrimination on the basis of his disability.  (See, Fifth Amended Complaint, ¶ 64 and 65). Dismissal on this ground would be improper.

Defendants next argue that the complaint pleads that HSC is a "private company" (Fifth Amended Complaint, ¶ 9).  Since Title IX of the ADA prohibits discrimination by a "public entity" the claim cannot stand as plead.  Plaintiff, however, points out that in HSC's answer, it denies that

it is a "private company. In reliance on that denial, Plaintiff asks leave to amend her complaint to plead the correct status. The motion is therefore allowed on this ground, and Plaintiff may amend this allegation.

Defendants' argument that Count XII is identical to Count VII is conceded by Plaintiff. Count XII is therefore dismissed.

Defendants' motion to dismiss Count XIII is identical to the motion by the ACH Defendants, discussed above, with the same result. The motion is granted and the Count is dismissed.

Defendants next challenge Count XIV, arguing that it is either insufficiently plead or it is duplicative. This argument was discussed above; the count is dismissed.

As to Count XV, Defendants argue that the tort of intentional infliction of emotional distress requires the pleading of intent, which is lacking. As Plaintiff points out, the Complaint alleges that the Defendants acted intentionally or with reckless disregard (Count XV, ¶ 90), so this argument is without merit.

Defendants also argue, however, that the relief sought in Count XV is for the emotional distress suffered by the decedent, so it must be brought under Count XVI as a Survival Act claim. That is incorrect. The Survival Act provides no cause of action; it simply allows certain claims to "survive" the death of a plaintiff. Count XV stands. The separate claim under the Survival Act (Count XVI) is dismissed instead.

Finally, the HSC Defendants argue that the *respondeat superior* claim in Count XX is redundant with the other counts suing HSC. That is not accurate. To the extent that an employee of HSC is found directly liable, HSC might be vicariously liable even if not directly liable. The *respondeat superior* claim stands.

## CONCLUSION

The motions of the ACH defendants (#78 and #90), the Sheriff defendants (#80), and the HSC defendants (#82) are granted in part and denied in part, as stated herein.

Plaintiff may file one last amended complaint within 14 days of this date. This Sixth Amended Complaint must delete all claims dismissed pursuant to this Order. It may add no new claims, and may only amend existing claims to the extent and in the manner stated herein. Answers to that amended complaint are to be filed within 14 days thereafter.

Plaintiff is also to file his execution of service on Defendant Hibbert within 14 days of this Order. Failure to do so may result in dismissal of Hibbert for lack of prosecution.

ENTERED ON March 28, 2008

                        s/ John A. Gorman

                    JOHN A. GORMAN
            UNITED STATES MAGISTRATE JUDGE